UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER BLOXSON,

        Plaintiff,

Case No. 1:10-cv-1303

Hon. Robert J. Jonker

v.

DANIEL THOMPSON, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Daniel Thompson and Michael Martin's motion for summary judgment (docket no. 12).

**I.      Background**

Plaintiff filed a complaint naming four defendants. Compl. (docket no. 1). On initial screening pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321(1996), the court dismissed all defendants except for Bellamy Creek Correctional Facility (IBC) Chaplain Daniel Thompson and Michigan Department of Corrections (MDOC) Correctional Facility Administration Special Activities Director Mike Martin. *See* Opinion and Order (docket nos. 4 and 5). Pending before the court are plaintiff's allegations that Chaplain Thompson and Director Martin violated his First Amendment rights. The court's opinion screening the complaint summarized plaintiff's allegations as follows:

> Plaintiff alleges that he is a practitioner of Buddhism and that a major tenet of his faith is abstention from all animal products and by-products, including dairy and eggs. On June 9, 2010, he requested a strict vegetarian diet. Defendant Chaplain Thompson interviewed Plaintiff on June 24, and submitted a summary of Plaintiff's

> responses to Defendant Martin. Upon review of the interview responses, Martin denied Plaintiff's request for a strict vegetarian diet.
>
> Plaintiff contends that his First Amendment right to practice his religion is substantially burdened by Defendants denial of the strict vegetarian diet. He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

Opinion at p. 2.

### II. Defendants' motion for summary judgment

### A. Legal Standard

Chaplain Thompson and Director Martin have moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

> plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Director Martin

Director Martin contends that he is entitled to summary judgment due to plaintiff's failure to properly exhaust the claims alleged against him.

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

3

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's grievance

The record reflects that Director Martin made the ultimate decision to deny plaintiff's request for a strict vegetarian diet. In this regard, plaintiff's complaint included a copy of Director Martin's Memorandum to IBC Warden McKee and Chaplain Thompson advising them of the denial. *See* MDOC Memorandum (July 20, 2010) (docket no. 1-1). Director Martin's Memorandum provided in pertinent part as follows:

> Mr. Bloxson was interviewed for the above religious diet on June 24, 2010 by Chaplain Thompson. It is difficult for one person to discern the sincerity and intent of another person. However, based upon the information provided, this applicant **IS NOT APPROVED** for the **Strict Vegetarian Diet**. He SHOULD NOT be permitted access to the religious menu requested.

Martin Memorandum (July 20, 2010).

Plaintiff alleged that he exhausted his claim for denial of a religious diet pursuant to Grievance no. IBC-10-08-2165-20F ("2165"). *See* Compl. (docket no. 1); Grievance no. 2165 (docket no. 1-1). However, defendant points out that this grievance was directed against Chaplain Thompson, not Director Martin, obviously an entirely different individual. *See* Grievance no. 2165 (in setting forth the problem to be grieved, plaintiff stated in pertinent part as follows, "Chaplain Thompson has refused[d] [t]o honor my request for the strict vegetarian diet, citing 'insincerity'"). But the chaplin was not the decision-maker. Based on this record, defendant has demonstrated that plaintiff's grievance 2165 was not properly exhausted as to Director Martin.

In his response, plaintiff continued to rely on grievance 2165, contending that this court should simply construe the grievance as including Director Martin's name. Plaintiff cites *Haines v. Kerner*, 404 U.S. 519 (1972) for the proposition that the court should give this "liberal construction" to the grievance, because he is a *pro se* plaintiff. *See* Plaintiff's Brief at p. 2 (docket

no. 17); *Haines*, 404 U.S. at 520 (holding a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). The court rejects plaintiff's claim that *Haines* requires the court to "liberally construe" a prisoner's grievance filed against an MDOC employee. It is well established that *pro se* plaintiffs "enjoy the benefit of a liberal construction of their pleadings and filings" in federal court proceedings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). However, the court's "liberal construction" is limited to pleadings and filings in Federal Court proceedings. "'Liberal construction' of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure, and thus is consistent with the general principle of American jurisprudence that 'the party who brings a suit is master to decide what law he will rely upon.'" *Castro v. United States*, 540 U.S. 375, 386 (Scalia, J., concurring in part and concurring in judgment) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)).

This rule of "liberal construction" does not apply to plaintiff's grievance filed with the MDOC. This grievance was not a pleading filed in a Federal Court proceeding and subject to the Federal Rules of Civil Procedure. Rather, it was part of an administrative procedure at an MDOC correctional facility subject to the MDOC's Policy Directives. Contrary to plaintiff's assertion that this court should "liberally construe" the grievance, the United States Supreme Court has directed federal courts to strictly enforce the state's procedures in determining whether a prisoner has properly exhausted a grievance in accordance with those procedures. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). It is not the responsibility of prison

officials to speculate as to who a prisoner could name in a grievance, in order to have a better claim. Such an approach would eviscerate the grievance process. The grievance belongs to the prisoner. In summary, the court will not "liberally construe" plaintiff's grievance by re-writing the grievance to include a claim that was not presented to the MDOC.

Viewing the evidence in the light most favorable to plaintiff, the record reflects that plaintiff failed to properly exhaust a grievance against Director Martin. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, Director Martin is entitled to summary judgment for lack of exhaustion.

### C. Chaplain Thompson

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Chaplain Thompson contends that he is not liable under § 1983 because plaintiff has failed to demonstrate that Thompson was personally involved in the decision to deny plaintiff's dietary request. In his affidavit, Chaplain Thompson stated that he interviewed plaintiff and "recorded his responses to each of the questions outlined in OP 05.03.150A verbatim and forwarded the same in writing to IBC Warden Ken McKee the same day for his review and processing."

Chaplain Thompson Affidavit at ¶ 4 (docket no. 13-3).[1]  Chaplain Thompson further stated that "I did not 'deny' his diet at any time as it is not my purview to either approve or deny religious diet requests."  *Id.*

As previously discussed, Director Martin issued the memorandum which denied plaintiff's request for a strict vegetarian diet.  In his response to the motion for summary judgment, plaintiff agrees that Director Martin denied his request and that Chaplain Thompson's participation was limited to that of a scrivener:

> Defendant "MIKE MARTIN" is liable because of his personal decision to "DENY" Plaintiff's request for a "Strict Vegetarian Diet" consistent with his Religious teachings and Defendant Daniel Thompson "personally" conducted the informational meeting, recorded Plaintiff's responses verbatim, and forwarded the responses for review and processing[.]

Plaintiff's Brief at p. 2 (docket no. 17).

Viewing these facts in the light most favorable to plaintiff, the record reflects that Chaplain Thompson did not make the decision to deny plaintiff's request for a religious diet.  His involvement was limited to conducting an interview, recording plaintiff's responses and forwarding those responses to the decision maker, i.e., Director Martin.  There is no evidence that Chaplain Thompson engaged in any wrongful conduct.  Government officials are personally liable for damages under § 1983 "only for their own unconstitutional behavior."  *Colvin v. Caruso*, 605 F.3d 382, 292 (6th Cir. 2010), quoting *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government - official defendant, through the official's own individual actions, has violated

---

[1] The court notes that defendants did not provide a copy of either the questions set forth in OP 05.03.150A or plaintiff's answers to those questions.  While this information might be helpful to understand the nature of the interview, it is not necessary to resolve the issue before the court.  In this regard, plaintiff agrees that Chaplain Thompson recorded his interview responses verbatim.  *See* discussion, *infra*.

the Constitution." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1948 (2009). Under these circumstances, where Chaplain Thompson did not deny plaintiff's request for a religious diet, but merely relayed plaintiff's verbatim responses to Director Martin (who later denied the request), there is no evidence that Chaplain Thompson engaged in any unconstitutional behavior. Accordingly, Chaplain Thompson is entitled to summary judgment on plaintiff's claim.[2]

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 12) be **GRANTED** and that this action be **DISMISSED**.


Dated: October 18, 2011                     /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge




ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] Having determined that plaintiff failed to exhaust his administrative remedies as to Director Martin and that Chaplain Thompson did not engage in unconstitutional behavior, and having resolved defendants' motion on those grounds, it is unnecessary for the court to address defendants' other arguments, i.e., that plaintiff was not denied his ability to practice his belief, and that defendants have both Eleventh Amendment immunity and qualified immunity.